## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG

|  |  |
|---|---|
| MICHAEL JACKSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THOMSON REUTERS AMERICA CORPORATION,<br><br>Defendant. | Case No. 1:24-cv-00088-MFU<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Michael Jackson ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of W. Va. Code § 5A-8-24 ("Daniel's Law") against Thomson Reuters America Corporation ("Thomson Reuters" or "Defendant"). Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## <u>NATURE OF ACTION</u>

1.      On April 10, 2021, West Virgnia enacted Daniel's Law, introduced as SB 470[1] and codified at W. Va. Code § 5A-8-24.  Upon the statute's taking effect on July 9, 2021, the West Virginia Legislature achieved its goal – as stated by State Senator Mike Woelfel, the lead sponsor of SB 470[2] – of ensuring that West Virginia would "have the best law there is in the

---

[1] https://www.wvlegislature.gov/Bill_Status/Bills_history.cfm?input=470&year=2021&sessiontype=RS&btype=bill.

[2] *Id.*

United States of America to make sure that the public information of our judicial officers and law enforcement [is] protected."[3]

2.    Per the West Virginia Legislature[4]:

> [W. Va. Code § 5A-8-24] adopts the name Daniel's Law. The source of the name of the law is a tragic story. It is the story of a person who compiled information – a dossier of information – about a federal judge in New Jersey. Her name is Judge Esther Salas. Her son, Daniel, was killed by the person who compiled the information. So the new protections provide that it's to be liberally construed to provide broad protection to accomplish the policy of the state, which is to enhance the safety of public officials and their family members. … [W]ithout such person[s'] written permission, no person, business, [or] association can disclose or redisclose or otherwise make available that information – that personal information – home address, personal telephone numbers.

3.    Thus, this law honors Judge "Salas' son, Daniel Anderl, who had come home from college to celebrate his 20th birthday[]" and was the victim of a "July 19 [of 2020] fatal shooting at U.S. District Judge Esther Salas's home in North Brunswick[, New Jersey by a] gunman who found her address online[.]"[5]

4.    According to NJ.com, Judge "Salas, in an emotional statement, had urged that actions be taken to protect federal judges' privacy."[6]  That statement[7] reads, *inter alia*:

> My family has experienced a pain that no one should ever have to endure. And I am here asking everyone to help me ensure that no one ever has to

---

[3]  https://sg001-harmony.sliq.net/00289/Harmony/en/PowerBrowser/PowerBrowserV2/20210330/-1/50869#agenda_ at 10:48:21 AM (West Virginia Senate Video Archive, March 30, 2021).

[4]  *Id.* at 10:42:31 AM (West Virginia Senate Video Archive, March 30, 2021).

[5]  https://www.nj.com/politics/2020/11/murphy-to-sign-law-making-it-illegal-to-post-address-phone-number-of-judges-prosecutors.html.  *See also* https://www.nj.com/middlesex/2020/07/husband-son-of-federal-judge-shot-at-their-nj-home-sources-say.html; https://www.nj.com/politics/2020/11/nj-makes-it-illegal-to-post-addresses-phone-numbers-of-judges-prosecutors-after-judges-son-was-killed.html; https://www.nj.com/news/2020/12/nj-law-is-meant-to-protect-judges-after-horrific-killing-implementing-it-wont-be-easy.html.

[6]  *Id.*

[7]  https://www.nj.com/news/2020/08/my-sons-death-cannot-be-in-vain-judge-speaks-out-for-first-time-of-the-day-of-horror-when-a-madman-attacked.html.

---

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED
CASE NO. 1:24-cv-00088-MFU                                                      2

experience this kind of pain. We may not be able to stop something like this from happening again, but we can make it hard for those who target us to track us down.

As a federal judge, I took an oath to administer justice without respect to a person's race, gender, or economic status. As I speak to you today, I can honestly say that I have worked tirelessly to uphold that pledge. As federal judges, we understand that our decisions will be scrutinized, and some may disagree strongly with our rulings. We know that our job requires us to make tough calls, and sometimes those calls can leave people angry and upset.

That comes with the territory and we accept that.

But what we cannot accept is when we are forced to live in fear for our lives because personal information, like our home addresses, can be easily obtained by anyone seeking to do us or our families harm.

Unfortunately, for my family, the threat was real and the free flow of information from the Internet allowed this sick and depraved human being to find all our personal information and target us.

Currently, federal judges' addresses and other information is readily available on the Internet. In addition, there are companies that will sell your personal details that can be leveraged for nefarious purposes.

In my case, this monster knew where I lived and what church we attended and had a complete dossier on me and my family. At the moment there is nothing we can do to stop it, and that is unacceptable.

My son's death cannot be in vain, which is why I am begging those in power to do something to help my brothers and sisters on the bench.

Now, more than ever, we need to identify a solution that keeps the lives of federal judges private. I know this is a complicated issue, and I don't pretend to know or have all answers, but together we can find a way. Let's commence a national dialogue, let's work collaboratively to find a solution that will safeguard the privacy of federal judges.

Let me be clear and tell you firsthand—this is a matter of life and death. And we can't just sit back and wait for another tragedy to strike.

5.    Daniel's Law reflects this call to action and the West Virginia Legislature's

efforts to "take a step toward avoiding that horrible massacre in New Jersey where … it was so

easy to find [Judge Salas'] home that [a gunman] came there to kill her and killed her son."[8]

6.     The statute provides, in pertinent part:

> Unless written permission is first obtained from the individual, a person, business, or association shall not disclose, redisclose, or otherwise make available the home address or unpublished home or personal telephone number of any active, formerly active, or retired judicial officer, prosecutor, federal or state public defender, federal or state assistant public defender, or law-enforcement officer under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property.

W. Va. Code § 5A-8-24(e).

7.     Despite this abundantly clear proscription, Defendant has disclosed, redisclosed, or otherwise made available the home addresses and unpublished home or personal telephone numbers of thousands of West Virginia's active, formerly active, or retired judicial officers, prosecutors, federal or state public defenders, federal or state assistant public defenders, and law-enforcement officers.  *See id.*

8.     Defendant's conduct has exposed Plaintiff and those similarly situated to harassment and/or risk of harm to life or property.  *See id.*  As set out by Judge Salas and cited *supra*, every day, public servants make "decisions [that] will be scrutinized, and some may disagree strongly[.] … [The nature of their] job[s] requires [them] to make tough calls, and sometimes those calls can leave people angry and upset."[9]  Indeed, in the attack on Judge Salas, her husband Mark Anderl, and her son Daniel Anderl, "[a]uthorities [] identified the assailant as Roy Den Hollander, a self-described anti-feminist **lawyer who had a case before Salas and**

---

[8]  https://sg001-harmony.sliq.net/00289/Harmony/en/PowerBrowser/PowerBrowserV2/20210410/-1/50928#agenda_ at 05:59:53 PM (West Virginia Senate Video Archive, April 10, 2021).

[9]  https://www.nj.com/news/2020/08/my-sons-death-cannot-be-in-vain-judge-speaks-out-for-first-time-of-the-day-of-horror-when-a-madman-attacked.html.

railed against her in a racist and sexist post on his website."[10]   Making Plaintiff's and other

public servants' personal information "readily available on the Internet … [means that those]

personal details [] can be leveraged for nefarious purposes[,]"[11] including by individuals (i.e.,

criminals, disputants, offenders, etc.) with whom Plaintiff and his peers deal in the line of duty.

9.     Plaintiff brings this action to prevent Defendant from further violating the privacy

rights of West Virginia's active, formerly active, or retired judicial officers, prosecutors, federal

or state public defenders, federal or state assistant public defenders, and law-enforcement

officers, as well as others residing at such a person's home address, and to recover statutory

damages from Defendant, pursuant to W. Va. Code § 5A-8-24(e)(1)-(2).

## PARTIES

10.     Plaintiff Michael Jackson is, and has been at all relevant times, a resident of

Gassaway, West Virginia.  Plaintiff is a retired law-enforcement officer who served with the

Braxton County, West Virginia Sheriff's Department; the Sutton, West Virginia Police

Department; and the Clendenin, West Virginia Police Department.  Plaintiff Jackson's home

address and/or unpublished home or personal telephone number(s) were disclosed, redisclosed, or

otherwise made available by Defendant; Defendant did so without Plaintiff Jackson's written

permission; and this exposed Plaintiff Jackson to harassment and/or risk of harm to life or property.

11.     Defendant Thomson Reuters America Corporation is a Delaware corporation with

its principal place of business at 610 Opperman Drive, Eagan, Minnesota 55123.  Through its

Thomson Reuters CLEAR and Westlaw PeopleMap services, Defendant has disclosed,

redisclosed, or otherwise made available the home addresses and unpublished home or personal

---

[10] *Id.* (emphasis added).

[11] *Id.*

telephone numbers of thousands of West Virginia's active, formerly active, or retired judicial officers, prosecutors, federal or state public defenders, federal or state assistant public defenders, and law-enforcement officers, whom Defendant knows to reside in West Virginia.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

13.     This Court has personal jurisdiction over Defendant because Defendant regularly does and solicits business in this District; Defendant persistently discloses, rediscloses, or otherwise makes available the home addresses and unpublished home or personal telephone numbers of thousands of individuals whom Defendant knows to reside in this District; and Defendant derives substantial revenue from services rendered in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.  Plaintiff served as a law-enforcement officer with the Braxton County Sheriff's Department, making Plaintiff's written permission required before Defendant disclosed, redisclosed, or otherwise made available Plaintiff's home address or unpublished home or personal telephone number.  *See* W. Va. Code § 5A-8-24(e).  Additionally, Defendant disclosed, redisclosed, or otherwise made available Plaintiff's Braxton County home address.  Thereby, Defendant exposed Plaintiff to harassment and risk of harm to life or property in this District.

## LEGAL AND FACTUAL BACKGROUND

**I.      Overview of Thomson Reuters CLEAR and Westlaw PeopleMap**

15.     Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[12]

16.     Specifically, Defendant provides online "people search" (also known as "people finder") services.  People search companies, like Defendant, specialize in compiling vast amounts of information about individuals from various sources, such as public records, social media, and other data brokers.[13]

17.     Defendant and its competitors monetize said personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

18.     Defendant's directories are available through its Thomson Reuters CLEAR and Westlaw PeopleMap services.  There, users can view the home address and unpublished home or personal telephone number of any active, formerly active, or retired judicial officer, prosecutor, federal or state public defender, federal or state assistant public defender, or law-enforcement officer.

19.     Indeed, Defendant advertises how Thomson Reuters CLEAR allows users to "[i]mmediately see connected phone numbers and addresses for subjects of interest[.]"[14] Similarly, Defendant advertises how Westlaw PeopleMap "can help you[] … [l]ocate current and accurate addresses and phone numbers."[15]

---

[12] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[13] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

[14] https://legal.thomsonreuters.com/en/products/clear-skip-tracing/features.

[15] https://www.thomsonreuters.com/en-us/help/westlaw-edge/public-records/conduct-public-records-search.html.

20.     This is achieved by simply searching an individual by name, city, state, phone number, address, and/or other parameters:[16]



---

[16] Note, here and in the subsequent paragraphs, Thomson Reuters CLEAR is pictured first; Westlaw PeopleMap is pictured second.  Defendant does not redact or blur searched individuals' sensitive personal information – the redactions shown in the subsequent paragraphs were applied by Plaintiff's counsel.

21.    After entering this information, users of Thomson Reuters CLEAR and Westlaw PeopleMap are furnished a list of search results.  Each result corresponds to an actual person that Defendant has located who matches the searched parameters.  Included are the home addresses and unpublished home or personal telephone numbers of covered persons.



**Thomson Reuters CLEAR**



**Thomson Reuters CLEAR**



**Westlaw PeopleMap**

22.    Upon clicking on specific individuals of interest, users of Thomson Reuters CLEAR and Westlaw PeopleMap can access reports that offer an even more comprehensive view into said individuals' private details.  Again, these reports include home addresses and unpublished home or personal telephone numbers, in addition to a plethora of other pieces of identifying information.







**Thomson Reuters CLEAR**



**Westlaw PeopleMap**



**Westlaw PeopleMap**

II.     **The Way Defendant "Discloses" and "Rediscloses" Sensitive Personal Information is Materially Different from How Government Sources of Public Records Function**

23.     As stated above, Defendant specializes in compiling information about individuals from, *inter alia*, public records.[17]

24.     However, there are material differences between the way Defendant "discloses" and "rediscloses" sensitive personal information and the way that government sources of public records function.

25.     Completing a search on Thomson Reuters CLEAR and Westlaw PeopleMap for a particular person requires as little as two very basic pieces of information: the person's name and the state in which they reside.

26.     Defendant then makes it easy to pick out a person of interest from a list of search results.  For example, if one were to search a person by the name of "Jane Sample-Document," then Thomson Reuters CLEAR and Westlaw PeopleMap might provide search results like this. Note, the following search results are merely samples from Defendant's website(s), and they are thus unredacted.

//

//

//

//

//

//

//

---

[17] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.



**Thomson Reuters CLEAR**



**Westlaw PeopleMap**

27.     In the results, one can pick between Janes based on details in their names or aliases (i.e., middle name, initial, suffix).  One can pick between Janes based on their date of birth and age (i.e., a Jane who is 63, rather than 30).  One can pick between Janes based on their address and past addresses (i.e., a Jane who lives in Tucson and has previously lived in Saint Paul).  One can even pick between Janes based on details like phone number, email address, and Social Security Number.

28.     Put succinctly, Thomson Reuters CLEAR and Westlaw PeopleMap are designed to help users "find people[.]"[18]

---

[18] https://legal.thomsonreuters.com/en/products/clear-skip-tracing. *See also* https://legal.thomsonreuters.com/en/c/peoplemap-on-westlaw ("Find individuals ... faster[.]").

29.     Government sources of public records are not designed for this purpose and do not function the same way.  Instead, they fulfill the "express purpose of providing full and complete information to all persons about the workings of government[.]"[19]

30.     One example is online tax record search websites.  The Braxton County Sheriff's Tax Office maintains such a website at http://braxton.softwaresystems.com/INDEX.html:



31.     Searching this website differs in two key respects from searching Defendant's services.

32.     Again, searching Thomson Reuters CLEAR and Westlaw PeopleMap requires only a person of interest's name and **state**.  But the Braxton County Sheriff's Tax Office website provides search results only for individuals who live in **Braxton County** – not the **whole of West Virginia**.  This makes it very difficult to find a person of interest, unless one already knows the county in which the person of interest lives.

33.     Second, although the Sheriff's Tax Office website search results provide a person's address (redacted by Plaintiff's counsel in blue), they do not list a person's date of birth

---

[19] https://privacy.wv.gov/SiteCollectionDocuments/Intersection%20of%20FOIA%20and%20Privacy/FOIA%20Handbook%20PDF.pdf at p. 1.

and age; they do not list all of a person's known (i.e., past) towns or addresses (especially if they moved from county to county); and they do not list a person's phone number, email address, or Social Security Number:



34.    Thus, if one were hoping to single out a particular person by using the Sheriff's Tax Office, one would be left scratching their head, wondering if they were looking for, say, "Michael A. Jackson" or "Michael C. Jackson."  This is because, on the Sheriff's Tax Office website, there is little, if any, contextual information about persons of interest that could be pieced together.

35.    County clerks also maintain ARC/GIS mapping websites.  Braxton County maintains such a website at https://wvias.io/search/Braxton/2025:

36.    But, like the Sheriff's Tax Office website, this website provides search results only for individuals who live in Braxton County – not the whole of West Virginia.  And the

ARC/GIS website provides little, if any, contextual information about persons of interest.

37.     Once again, one would be at a loss if trying to distinguish between, say, "Michael A. Jackson" and "Michael C. Jackson":



38.     A search of https://www.mapwv.gov/parcel, a website maintained by the West Virginia State Tax Division, would not yield clearer results:



39.     On the State Tax Division website, unlike Defendant's services, the option to search for an individual by name is not highlighted – making it far more likely to go unnoticed entirely.  Instead, the State Tax Division features options to "Search by E-911 Address"; "Search by Parcel Attributes"; "Search by Geometry"; and "Search by Coordinates."  Of course, these options require the user to **already** have a person of interest's address.

40.     If one were to "Click [] for more options" they would be brought to the page https://mapwv.gov/assessment/assessment.  There, once again, the State provides little information that could be used to single out a person of interest.  Note, details have nonetheless been redacted by Plaintiff's counsel:



41.     The State does not list a person's date of birth and age; it does not list all of a person's known (i.e., past) towns or addresses (especially if they moved county to county); and it does not list a person's phone number, email address, or Social Security Number.  One would accordingly be hard-pressed to pick a particular "Michael Jackson" out of the list of 47 results.

42.     The portion of the West Virginia Secretary of State's website listing candidates for public office – https://apps.sos.wv.gov/elections/candidate-search/ – reveals even less:



43.     Here, candidates' **mailing addresses** are listed.  As made clear by the West

Virginia Secretary of State's "Candidate's Certificate of Announcement for 2024 Elections"

form,[20] a mailing address can be "different from residence address[.]"  In other words, the West

Virginia Secretary of State website discloses the place where a person prefers to receive mail

(which can include a P.O. Box) but not necessarily the place where a person physically lives.

44.     To summarize, Defendant "discloses" home addresses and unpublished home or

personal telephone numbers in a way that materially differs from how government sources of

public records function.  Defendant offers a highly comprehensive, highly accessible search

function that requires only two pieces of information about a person of interest: name and state.

This search function returns results with a great deal of contextual information that can be pieced

together to single out a person.  On the other hand, government sources of public records offer

comparatively less robust, less straightforward search functions that require more pieces of

information to prove useful.  Government search functions return results with little contextual

---

[20] https://sos.wv.gov/FormSearch/Elections/Candidate/C-1%20Certificate%20of%20Announcement.pdf.   *See also*
https://sos.wv.gov/FormSearch/Elections/Candidate/C-7%20Write-in%20Certificate%20of%20Announcement.pdf.

information that can be pieced together to single out a person.

45.     Defendant also "rediscloses" information from public records – i.e., home addresses and unpublished home or personal telephone numbers.  The government, as the original source of these public records, does not "redisclose" them.  W. Va. Code § 5A-8-24(e).

46.     On Thomson Reuters CLEAR and Westlaw PeopleMap, Defendant "rediscloses" myriad pieces of information, all in one place.  These include: "[a]ddress"; "[d]river's [l]icense [n]umber"; "[e]mail [a]ddress"; "[p]erson [n]ame"; "[p]hone [n]umber"; and "SSN[.]"[21]

47.     If one were to search government sources of public records for these pieces of information (to the extent they are even available), it would take far longer.  On information and belief, the government does not aggregate this information in one place for the public to view.  That is, the government might "disclose" the information in its original form, but the government does not "redisclose" discrete public records or pieces of information in a new, packaged form.

## II.    Defendant Discloses, Rediscloses, or Otherwise Makes Available Unpublished Home or Personal Telephone Numbers; the Government Does Not

48.      As the above allegations and images of Thomson Reuters CLEAR and Westlaw PeopleMap make clear, Defendant discloses, rediscloses, or otherwise makes available unpublished home or personal telephone numbers.  Defendant makes no exception for covered persons.

49.     In the above images, Thomson Reuters CLEAR and Westlaw PeopleMap plainly include "[p]hone [n]umbers[.]"  This comports with Defendant's representations that Thomson Reuters CLEAR allows users to "[i]mmediately see connected phone numbers and addresses for

---

[21] https://www.thomsonreuters.com/content/dam/openweb/documents/pdf/legal/fact-sheet/clear-brochure.pdf at p. 3.  *See also*  https://training.thomsonreuters.com/media/Introducing+PeopleMap+on+Westlaw+Precision/1_ada15947/280999852; https://cdn.cocodoc.com/cocodoc-form-pdf/pdf/251286-fillable-westlaw-peoplemap-watch-list-form.pdf at pp. 4, 27.

subjects of interest"[22] and Westlaw PeopleMap "can help you[] … [l]ocate current and accurate addresses and phone numbers."[23]

50.     For comparison, none of the government websites cited above – http://braxton.softwaresystems.com/INDEX.html (pictured below, first); https://wvias.io/search/Braxton/2025 (second); https://www.mapwv.gov/parcel (third); and https://apps.sos.wv.gov/elections/candidate-search/ (fourth) – display telephone numbers.

### Braxton County Real Property - Tax Year: 2024

| Ticket Number: ███ | | Account Number: ███ |
| District: ███ | | More Info: Details |

| Owner Name: ███ | | Property: ███ |
| In Care of: | | |
| Address: ███ | Map: ███ | Parcel: ███ |
| | Lot Size: | Acreage: |
| Lending Inst: | Book: ███ | Page: ███ |

| Tax Class: ██ | Homestead Exemption: | Back Tax: | Exoneration: | Prior Delinquents: | Special Disposition: |

**DUE:** First Half: ███  Second Half: ███  Total Due: ███

| ASSESSMENT: | | | | PAYMENTS RECEIVED: | | |
| --- | --- | --- | --- | --- | --- | --- |
| Assessment | GROSS | NET | TAX (1/2 Year) | | First Half | Second Half |
| Land | ██ | ██ | | Net | ██ | ██ |
| Building | ██ | ██ | | Discount | ██ | ██ |
| Total | ██ | ██ | ██ | Interest | ██ | |
| | | | | Total | ██ | ██ |
| | | | | Date | ██ | ██ |

//

//

//

//

//

//

[22] https://legal.thomsonreuters.com/en/products/clear-skip-tracing/features.

[23] https://www.thomsonreuters.com/en-us/help/westlaw-edge/public-records/conduct-public-records-search.html.





51.    On information and belief, this is because the government does not disclose, redisclose, or otherwise make available unpublished home or personal telephone numbers.

**III.    Defendant "Advertises" Covered Persons' Sensitive Personal Information; the Government Does Not**

52.    W. Va. Code § 5A-8-24(c) provides that:

(1) "Disclose" means to publish, publicly display, distribute, deliver, circulate, post, lend, provide, advertise, or disseminate by any means including, but not limited to, electronic transmission and on any medium including, but not limited to, the Internet.

53.    Defendant illegally publishes, publicly displays, distributes, delivers, circulates, posts, lends, provides, and disseminates the home addresses and unpublished home or personal telephone numbers of persons covered by Daniel's Law.

54.    Further, Defendant **advertises** its Thomson Reuters CLEAR and Westlaw PeopleMap services that include covered persons' home addresses and unpublished home or personal telephone numbers.

55.    The fact that Defendant **advertises** is easily established by searching for Thomson Reuters CLEAR and Westlaw PeopleMap on an advertiser tracking platform, such as SpyFu.[24] There, it is revealed that Defendant is a successful advertiser.  Among many other things, Defendant has advertised Thomson Reuters CLEAR with messages like:

Quickly Search Public Records — Close gaps in your investigations & locate hard-to-find information on your subject. Save time searching with our user-friendly platform & simple filtering parameters.

Defendant has also advertised Westlaw PeopleMap with messages like:

Discover Hidden Connections — The premier public records search tool for discovering data other resources might miss. Locate people and find critical information about their connections[ and] assets[.]

---

[24] *See* https://www.spyfu.com/overview.





56.    On the other hand, if one were hoping to find public records from the government, one might Google the phrase "Braxton County, WV public records" and look for results from ".gov" sites:



57.    In the search results, one would likely find https://www.brbpub.com/west-virginia/braxton/, as pictured above:



58.    At first glance, this might look like a government website – it advertises "Braxton County, WV Public Records" and calls itself a "Free Records Search and Public Records Directory[.]"

59.    But the very bottom of said website makes clear that it is owned and operated by

PeopleConnect, Inc.



60.    Likewise, if one were to enter the query the query "michael jackson gassaway wv

site:.gov" on Google, there are no results showing Michael Jackson's home addresses and

unpublished home or personal telephone numbers:



61.    This is because, on information and belief, the government does not advertise said

information.

62.    The Braxton County Sheriff's Tax Office does not advertise its website located at

http://braxton.softwaresystems.com/INDEX.html.  Braxton County does not advertise its

ARC/GIS mapping website located at https://wvias.io/search/Braxton/2025.  The West Virginia

State Tax Division does not advertise https://www.mapwv.gov/parcel.  The West Virginia

Secretary of State does not advertise the portion of its website listing candidates for public office,

located at https://apps.sos.wv.gov/elections/candidate-search.

   63.  When these sites are searched on Google's advertiser tracking platform – Google

Ads Transparency Center (available at adstransparency.google.com) – there are no results:



64.    To the extent wv.gov advertises at all with Google, said ads tend to promote hiring events and other services.  The wv.gov ads have nothing to do with public records:



65.    Searching for the four government websites on advertiser tracking platform iSpionage (available at ispionage.com) also yields no results:

> Sorry, we're unable to find PPC data for braxton.softwaresystems.com…

> Sorry, we're unable to find PPC data for wvias.io…

> Sorry, we're unable to find PPC data for mapwv.gov…

> Sorry, we're unable to find PPC data for apps.sos.wv.gov…

66.     This is further corroborated by SpyFu, which estimates that, over the past year, softwaresystems.com had 0 paid keywords per month; wvias.io had 0 paid keywords per month; mapwv.gov had 0 paid keywords per month; and wv.gov had 16 paid keywords per month:



67.     Put succinctly, Defendant "advertises" in violation of Daniel's Law but the government does not.

## IV.    Defendant Exposes Covered Persons to Harassment and Risk of Harm to Life or Property

68.     To summarize the above, Defendant has "disclose[d], redisclose[d], or otherwise ma[d]e available the home address or unpublished home or personal telephone number of [] active, formerly active, or retired judicial officer[s], prosecutor[s], federal or state public defender[s], federal or state assistant public defender[s], or law-enforcement officer[s]" from West Virginia.  *See* W. Va. Code § 5A-8-24(e).

69.     And crucially, "written permission [was not] first obtained from the[se] individual[s]" by Defendant.  *See id.*  Defendant never requested – and said public servants never provided – written permission for Defendant to disclose, redisclose, or otherwise make available their home addresses and unpublished home or personal telephone numbers.  In fact, Plaintiff has no relationship with Defendant whatsoever.  Plaintiff had never heard of Defendant and had no

reasonable ability to discover Defendant's use of his personal information until shortly before filing suit.

70.     Defendant's conduct exposed Plaintiff and his peers to harassment and/or risk of harm to life or property because disclosing, redisclosing, or otherwise making available their personal information means that those personal details can be leveraged for nefarious purposes, including by individuals (i.e., criminals, disputants, offenders, etc.) with whom the public servants dealt in the line of their duties.

71.     The Federal Trade Commission's ("FTC") report on "Data Brokers" highlights this:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][25]

72.     The FTC further explains:

> People buy these reports for many different reasons: some might want to find an old friend, look up a potential love interest, or connect with a neighbor.
>
> But some people, like survivors of domestic violence or stalking, may not want anyone to find out where they live, or the name and address of their family members.[26]

73.     These findings align with the many reasons why Defendant's products are so dangerous.

---

[25] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

[26] https://consumer.ftc.gov/articles/what-know-about-people-search-sites-sell-your-information.

74.     As a marketer of people search products, Defendant has knowledge about the findings in the FTC's report.

75.     First, Defendant's search function requires very little information about a person of interest to, in turn, return a great deal of contextual information needed to precisely identify someone (i.e., tell apart one Michael Jackson from another).  This can be used to single out a particular covered person.

76.     Second, Defendant "rediscloses" – aggregates and packages – myriad pieces of information, all in one place.  This facilitates quickly and conveniently profiling victims, allowing bad actors to compile dossiers that can be used to physically track down and/or emotionally/mentally target victims (i.e., with personally-tailored fraud, scams, telephone or online harassment, etc.).

77.     Third, Defendant makes available telephone numbers.  This is conducive to telephone harassment, scam calls, and threats to digital safety/cybersecurity.

78.     Fourth, Defendant's advertisements of the Thomson Reuters CLEAR and Westlaw PeopleMap services entice people (including potential bad actors) to locate protected, sensitive information.  Defendant's ads call attention to the availability of this information and kindle interest in it.

79.     These risks came to a head when Roy Den Hollander targeted Judge Esther Salas and killed her son, Daniel Anderl, in July 2020:[27]

> [A] 2015 lawsuit over the military draft is receiving national attention after an attorney in the case is the suspect in [Judge Salas'] son's death.
>
> A female teenager sued the Selective Service System five years ago because she could not register for the male-only draft. In her most recent opinion on the case, filed in spring 2019, Salas sided with part of the plaintiff's

---

[27] https://abcnews.go.com/US/suspect-deadly-shooting-called-federal-judge-esther-salas/story?id=71901734.

argument, allowing the lawsuit to move forward.

The plaintiff's attorney at the time was Roy Den Hollander, a self-proclaimed anti-feminist lawyer[.] …

Hollander allegedly posed as a FedEx employee when he approached Salas' home and shot her husband, Mark Anderl, and her son, Daniel Anderl, 20, before escaping in a car, according to sources. Daniel Anderl died from his injuries, and Mark Anderl was critically injured and rushed to the hospital. Salas was unharmed. On Monday, Hollander was found dead by police in an apparent suicide, according to investigators.

That civil rights suit appears to be the only time Hollander argued before Salas in court. More insights into the case, and Hollander's feelings toward Salas, may be gleaned from an autobiography published on his personal website.

In it, the now late attorney accused Salas of delaying the years-long case because she was "apparently scared of making a decision one way or the other."
…

He also disparaged the ethnicity of Salas, who became the first Latina woman to serve on the federal bench in New Jersey after former President Barack Obama nominated her for the position. "Female judges didn't bother me as long as they were middle age or older black ladies," he wrote. "Latinas, however, were usually a problem -- driven by an inferiority complex." In another passage, he wrote that Salas was a "lazy and incompetent Latina judge appointed by Obama." In discussing the court proceedings, he praised "older white-male judges."

Hollander further criticized Salas' accomplished resume, writing that "affirmative action got her into and through college and law school," and dismissed her private practice and public defender work. Her one accomplishment, he wrote, was "high school cheerleader."

80.     Judge Salas appeared on Good Morning America one year later and discussed

how Roy Den Hollander stalked her:[28]

"What we're asking is that we protect our personal information. Our home addresses, our social security numbers, information that will be used to target us," Salas said. "This is what the shooter did in my case. He took all that available information, created a dossier, knew where I lived, knew my church, knew my husband's office, knew Daniel's school -- he even had

---

[28] https://www.goodmorningamerica.com/news/story/year-sons-death-judge-esther-salas-send-message-78918412.

games that Daniel had played in and he used that information to target us. And he took the most important thing in my life, in Mark's life. And that should be a grim reminder of what will happen if we do not do something to protect our judiciary."

81.    Per NJ.com:[29]

Den Hollander found Salas' home address online. …

The AP has previously reported that when Den Hollander was found dead he had a document with him with information about a dozen female judges from across the country, half of whom are Latina, including Salas. Justice Sonia Sotomayor was among the judges being tracked, Salas said in an interview with CBS News' "60 Minutes" in February.

82.    This was not an isolated incident.

83.    Other covered persons have been targeted:[30]

A New Jersey man was sentenced to 16 months in prison on Monday after pleading guilty to posting a federal judge's home address on social media networks with the intent to threaten and intimidate.

Federal prosecutors had accused, opens new tab William Kaetz, 56, of threatening to kill the judge overseeing his civil case. Although the indictment didn't name the judge he threatened, court records indicated Kaetz had a pending civil case before U.S. District Judge Claire Cecchi in New Jersey.

…

Kaetz allegedly sent an email to the judge's personal email account and others - including the general email for the U.S. Marshals Service - calling the judge a "traitor," a designation that "has a death sentence," prosecutors said.

Kaetz's sentencing comes more than a year after a disgruntled attorney allegedly shot and killed the son of U.S. District Judge Esther Salas at her home and wounded her husband in the same attack. The lawyer, Roy Den Hollander, was found dead from a self-inflicted gunshot the next day.

---

[29] https://www.nj.com/news/2021/03/after-deadly-nj-shooting-us-judiciary-seeks-to-boost-judges-security-at-home-work.html.

[30] https://www.reuters.com/legal/legalindustry/man-who-posted-judges-address-social-media-gets-16-months-prison-2021-08-02/.

Salas and Cecchi's courtrooms in the federal court in Newark are next to one other, according to the court's website.

84.     Services like Defendant's are regularly used for such nefarious purposes.

85.     According to the Verge:[31]

In 1999, investigation firm Docusearch provided information to a man who used it to track down a New Hampshire woman named Amy Boyer, shoot her to death, and then kill himself. When Boyer's mother sued the company, a judge determined that data brokers could be held responsible for disclosing information in certain circumstances, and that "pretexting" — using deception to gather information, as one Docusearch investigator had done — could make them liable for damages. (The family eventually settled for $86,000.)

86.     Amy Boyer's death is but one tragic example:[32]

[M]any cases of stalking and gendered violence have occurred in the ensuing years where the abusive individuals have acquired data from people search data brokers. In 2017, for instance, a survivor of domestic violence put it this way to ABC News:

If you have someone who's tried to kill you, for them to be able to just type in your name, and any known address that you've stayed at can pop up. It's scary, because now they know ways to start trying to find you.

For years, privacy advocates, regulators, and organizations supporting survivors of stalking and gendered violence have voiced concerns about people search data brokers and their linkage and sale of personal information. Beth Givens, the founder of Privacy Rights Clearinghouse, argued in 2002 that "providing access to public records on the internet alters the balance between access and privacy that has existed in paper and microfiche records." Four experts from the National Network to End Domestic Violence and a criminal justice scholar wrote in 2007 that "survivors have found that within their own communities, critical conversations about privacy and victim safety are being left out of community decisions to publish information that is considered to be part of a public record."

More recently, the National Domestic Violence hotline notes that stalking

---

[31] https://www.theverge.com/2017/3/21/14945884/people-search-sites-history-privacy-regulation.

[32] https://www.lawfaremedia.org/article/people-search-data-brokers-stalking-and-publicly-available-information-carve-outs.

tactics include, among many others, "collecting information about you
using public records, [using] online search services, or hiring investigators."
The Safety Net Project, part of the National Network to End Domestic
Violence, warns that people search websites, on top of stalkerware and other
technologies, can be another vector through which abusive individuals
gather information about people; after all, "they are easy for even people
who have never heard of them to find and use."

87.      Given the above, it is abundantly clear that Defendant's services are dangerous.

Unquestionably, Defendant "disclose[s], rediscloses[s], or otherwise make[s] available the home

address or unpublished home or personal telephone number" of persons covered by Daniel's

Law, "under circumstances in which a reasonable person would believe that providing such

information would expose another to harassment or risk of harm to life or property."  W. Va.

Code § 5A-8-24(e).

## CLASS ALLEGATIONS

88.      Plaintiff seeks to represent a class defined as: all individuals who are West

Virginia active, formerly active, or retired judicial officers, prosecutors, federal or state public

defenders, federal or state assistant public defenders, and law-enforcement officers, or anyone

else residing at such person's home address, whose home address and/or unpublished home or

personal telephone number was disclosed, rediscloses, or otherwise made available by

Defendant (the "Class").

89.      Plaintiff reserves the right to modify the Class definition, including by using

subclasses, as appropriate based on further investigation and discovery obtained in the case.

90.      **Numerosity:** The number of persons within the Class is substantial and believed

to amount to thousands of persons.  It is, therefore, impractical to join each member of the Class

as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual

members of the Class render joinder impractical.  Accordingly, utilization of the class action

mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

91.    **Commonality and Predominance:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include, but are not limited to, the following: whether Defendant violated W. Va. Code § 5A-8-24(e); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to W. Va. Code § 5A-8-24(e)(1)-(2).

92.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had his home address and/or unpublished home or personal telephone number(s) disclosed, redisclosed, or otherwise made available by Defendant; Defendant did so without written permission; and this exposed Plaintiff Jackson to harassment and/or risk of harm to life or property.

93.    **Adequate Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

94.    **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation

increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.  Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation Of Daniel's Law,
### W. Va. Code § 5A-8-24(e)

95.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

96.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

97.     W. Va. Code § 5A-8-24(c) provides that:

(1) "Disclose" means to publish, publicly display, distribute, deliver, circulate, post, lend, provide, advertise, or disseminate by any means including, but not limited to, electronic transmission and on any medium including, but not limited to, the Internet.

(2) "Immediate" family member means spouse, child, parent, or any other family member related by blood or by law to the judicial officer, prosecutor, or law-enforcement officer, and who resides in the same residence as the judicial officer, prosecutor, federal or state public defender, federal or state assistant public defender, or law-enforcement officer.

(3) "Judicial officer" means the chief justice or an associate justice of the United States Supreme Court, a judge of the United States Court of Appeals,

a judge of a federal district court, a magistrate judge of a federal district court, any other judge for a court established by federal law, the chief justice or a justice of the Supreme Court of Appeals of West Virginia, a circuit judge, a family law judge, a magistrate, an administrative law judge, a municipal court judge, or any other judge established by state law.

(4) "Law-enforcement officer" shall have the same definition as that term is defined in § 29B-1-2 of this code.

(5) "Prosecutor" means United States Attorney or his or her assistant United States attorneys, any other prosecutor established by federal law, the Attorney General of the State of West Virginia or his or her assistant attorneys general, a county prosecuting attorney or his or her assistant prosecuting attorneys, or any other prosecutor established by state law.

98.    W. Va. Code § 29B-1-2(2) provides that: "'Law-enforcement officer' shall have the same definition as this term is defined in W.Va. Code § 30-29-1[.]"  Therein, W. Va. Code § 30-29-1(6) provides that:

"Law-enforcement officer" means any duly authorized member of a law-enforcement agency who is authorized to maintain public peace and order, prevent and detect crime, make arrests, and enforce the laws of the state or any county or municipality thereof, other than parking ordinances, and includes those persons employed as campus police officers at state institutions of higher education in accordance with the provisions of §18B-4-5 of this code, persons employed as hospital police officers in accordance with the provisions of §16-5B-19 of this code, and persons employed by the Public Service Commission as motor carrier inspectors and weight-enforcement officers charged with enforcing commercial motor vehicle safety and weight restriction laws, although those institutions and agencies may not be considered law-enforcement agencies. The term also includes those persons employed as county litter control officers charged with enforcing litter laws who have been trained and certified as law-enforcement officers and whose certification is currently active. The term also includes those persons employed as rangers by resort area districts in accordance with the provisions of §7-25-23 of this code, although no resort area district may be considered a law-enforcement agency: Provided, That the subject rangers shall pay the tuition and costs of training. As used in this article, the term "law-enforcement officer" does not apply to the chief executive of any West Virginia law-enforcement agency, or to any watchman or special natural resources police officer, or to any litter control officer who is authorized and trained under the provisions of §7-1-3ff(d) of this code but is not trained and currently certified as a law-enforcement officer[.]

99. W. Va. Code § 5A-8-24(e) provides that:

Unless written permission is first obtained from the individual, a person, business, or association shall not disclose, redisclose, or otherwise make available the home address or unpublished home or personal telephone number of any active, formerly active, or retired judicial officer, prosecutor, federal or state public defender, federal or state assistant public defender, or law-enforcement officer under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property.

100. Defendant failed to comply with this Daniel's Law mandate.

101. Through its services – including, *inter alia*, Thomson Reuters CLEAR and Westlaw PeopleMap – Defendant has "disclose[d], redisclose[d], or otherwise ma[d]e available the home address or unpublished home or personal telephone number of [thousands of] active, formerly active, or retired judicial officer[s], prosecutor[s], federal or state public defender[s], federal or state assistant public defender[s], or law-enforcement officer[s]" from West Virginia. *See* W. Va. Code § 5A-8-24(e).

102. That is, *inter alia*, Defendant "publish[es], publicly display[s], distribute[s], deliver[s], circulate[s], post[s], lend[s], provide[s], advertise[s], [and/]or disseminate[s] by … the Internet" (W. Va. Code § 5A-8-24(c)(1)) said personal information pertaining to active, formerly active, or retired judicial officers, prosecutors, federal or state public defenders, federal or state assistant public defenders, and law-enforcement officers.

103. "[W]ritten permission [was not] first obtained from the individual" public servants, by Defendant. *See* W. Va. Code § 5A-8-24(e). Defendant never requested – and the active, formerly active, or retired judicial officers, prosecutors, federal or state public defenders, federal or state assistant public defenders, and law-enforcement officers never provided – written permission for Defendant to disclose, redisclose, or otherwise make available their home addresses and unpublished home or personal telephone numbers.

104.    Defendant's conduct exposed Class Members to harassment and/or risk of harm to life or property because disclosing, redisclosing, or otherwise making available public servants' personal information means that those personal details can be leveraged for nefarious purposes, including by individuals (i.e., criminals, disputants, offenders, etc.) with whom the public servants have dealt in the line of their duties. *See id.*

105.    Thus, on behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) statutory damages of $1,000 for each of Defendant's violations of Daniel's Law, pursuant to W. Va. Code § 5A-8-24(e)(1)-(2); and (4) reasonable attorneys' fees and other litigation costs pursuant to W. Va. Code § 5A-8-24(e)(2)(C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

(a)    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b)    Declaring that Defendant's actions, as set out above, violate W. Va. Code § 5A-8-24 ("Daniel's Law");

(c)    Awarding statutory damages of $1,000.00 for each of Defendants' violations of Daniel's Law, pursuant to W. Va. Code § 5A-8-24(e)(1)-(2);

(d)    Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with Daniel's Law;

(e)    Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to W. Va. Code § 5A-8-24(e)(2)(C);

(f)    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g)    Awarding such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all issues so triable.

Dated:  December 6, 2024                    Respectfully submitted,

**BORDAS & BORDAS, PLLC**

By: */s/ Jason E. Causey*
Jason E. Causey #9482
1358 National Road
Wheeling, WV 26003
Telephone: (304) 242-8410
E-Mail: jcausey@bordaslaw.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta*
Julian C. Diamond*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: pfraietta@bursor.com
             jdiamond@bursor.com

*Pro Hac Vice*

*Counsel for Plaintiff and the Putative Class*